No. 40,863

L. R. Foy Construction Co., Inc., *Appellant*, v. The Board of Education of School District No. 1, Leavenworth, Kansas; Frank Freeman, President of Said Board; Charles Timmons; Dorothy Voorhees; R. H. Hinz; LeRoy Sickel and W. I. Oliver, Members of Said Board; Hugh C. Bryan, Superintendent of Said Board, and E. Paul Lessig, Clerk-Business Manager of Said Board of Education, *Appellees*.

(325 P. 2d 53)

Opinion filed May 10, 1958.

*Donald C. Martindell* and *Robert J. Gilliland,* both of Hutchinson, argued the cause, and *William D. P. Carey, Wesley E. Brown, Edwin B. Brabets, John F. Hayes, C. William Miller, Robert C. Martindell* and *Elwin F. Cabbage,* all of Hutchinson, and *James E. Fussell,* of Leavenworth, were with them on the briefs for the appellant.

*F. C. Bannon* and *Ethan Potter,* both of Leavenworth, argued the cause and were on the briefs for the appellees.

The opinion of the court was delivered by

PRICE, J.: Plaintiff construction company, of Hutchinson, submitted a bid for the construction of a school building in Leavenworth. Accompanying the bid was a surety bid bond in the amount of $75,000.00. The bid as submitted was the low bid by a considerable amount and was accepted by the school board. Plaintiff later claimed that due to a mistake its bid was $100,000.00 lower than was intended. Negotiations for settlement of the dispute fell through and the board accepted the next lowest bid, submitted by another contractor.

Plaintiff then brought this action against the school board and school officials to have the bid bond declared null and void and to enjoin defendants from bringing suit on the bond.

From an adverse judgment, plaintiff has appealed.

The record in the case is voluminous, but, briefly stated, the over-all picture is this:

The school board was authorized to issue its bonds in the amount of $1,680,600.00 for a school building, including $125,000.00 for furnishings. Plans and specifications were prepared by the board's architect, and on February 13, 1957, the board issued invitations for bids. On March 8th a copy of the plans and specifications was mailed to plaintiff construction company, and on April 8th plaintiff submitted its initial bid of $1,750,000.00, intending to amend the bid by wire prior to the formal opening of bids which was set for April 11th at 2:30 P. M. Accompanying this bid was a surety bid bond in the amount of $75,000.00, executed by the American Bonding Company of Baltimore.

At 1:10 P. M. on April 11th, plaintiff, through its employee and estimator, McGaffin, telephoned an amended bid message to the Western Union office in Hutchinson for transmittal to Leavenworth. The message received by the telegraph office in Hutchinson from McGaffin read:

"BASE BID *DEDUCT* $569,611.00"

This message was immediately transmitted by wire to the telegraph office in Leavenworth and was telephoned by that office to the school board at approximately 1:55 P. M. It will be seen that the "deduct" figure of $569,611.00 contained in the telegram, subtracted from the initial bid of $1,750,000.00 previously submitted, made the revised bid received by the board in the sum of $1,180,389.00. Other contractors also submitted bids. The next lowest was that by Hunter in the amount of $1,289,831.00. Doolittle's bid was $1,290,000.00, and that of Bass was $1,307,373.00. Plaintiff's bid therefore was approximately $109,000.00 less than Hunter's, the next lowest.

At 2:30 P. M. the board opened the bids at a public meeting and shortly thereafter adjourned to another room to proceed with the letting. After a short discussion, plaintiff's bid, being the lowest submitted, was accepted and the president of the board started signing the contract forms. In the meantime plaintiff had received a telephone call from a material supplier to the effect that its bid was low by approximately $109,000.00. Plaintiff then called Loebsack the board's architect, who was present at the letting. This telephone call was made at 3:54 P. M. In this conversation the architect told McGaffin the basic amount of plaintiff's bid but did not quote plaintiff's telegram. McGaffin told Loebsack that there "must have been a mistake" and that "it looks like we left our window walls out." He requested that the board withhold any action but was advised by Loebsack the board had already acted. In this connection, it should be stated that in plaintiff's general estimate the window walls were listed at $104,950.00, but, contrary to McGaffin's statement to Loebsack, the window walls had not been omitted in making up the bid.

That evening McGaffin again called Loebsack about the matter and contended that plaintiff's bid should have been for $1,280,389.00 —that is, exactly $100,000.00 higher than its bid which was submitted to and accepted by the board. Plaintiff's position was that something was "wrong" but it was not sure of just what the trouble was until it discovered that the window walls had not in fact been

omitted. The next day plaintiff sent a telegram to the board pointing out the "error" in its former telegram and stating that the correct deduction was in fact $469,611.00, which figure would make plaintiff's bid in the amount of $1,280,389.00. This figure would make its corrected bid approximately $9,000.00 lower than Hunter's bid, the next lowest. This telegram also requested that if plaintiff's corrected bid was not accepted by the board the bid and bond should be returned.

On April 22nd a conference was had with the board, at which Mr. Foy, owner of plaintiff company, Loebsack, McGaffin, and their respective counsel, were present. The matter was gone over in detail. Plaintiff refused to perform under its bid as submitted and accepted by the board, but offered to go ahead and perform under its corrected bid. The board refused, and subsequently let the contract to Hunter for the sum of $1,289,831.00.

Plaintiff then brought this suit to have the bid bond declared null and void and to enjoin the board from bringing suit on it.

The case was tried on May 8th and 9th, and after having the matter under advisement the court made the following findings of fact:

"1. That the organization and respective officers of the parties hereto are as alleged and admitted herein;

"2. That on or about the 13th day of February, 1957, the defendant, the Board of Education of the City of Leavenworth, of the State of Kansas, caused to be issued its certain 'invitation for bids' for the construction of said High School buildings at Leavenworth, Kansas, according to plans and specifications prepared for it by its Architects, Thos. W. Williamson, Victor H. Loebsack and Associates;

"3. That the said plans and specifications provided for and included forms for bid, bid bond, agreement and performance bond and provided for bids for the general construction of said High School buildings with certain alternates therein described and that the plaintiff requested and received a copy of the aforesaid plans and specifications;

"4. That on or about the 8th day of April, 1957, the plaintiff caused to be mailed to the defendant Board of Education, its bid for said general contract and alternates and that the bid of the plaintiff for said general contract was $1,750,000.00 and that said bid of the plaintiff with bid bond attached thereto is in proper form and was received by the defendant Board of Education prior to the time provided for the opening of the bids for said construction;

"5. That addenda Number 1 and Number 2 were made to said plans and specifications in proper time and that the plaintiff had adequate notice thereof prior to the time fixed for opening of bids, April 11, 1957;

"6. That on the 11th day of April, 1957, at or about 1:10 P. M. of said day,

the plaintiff caused to be sent to the defendant, Board of Education, through its said Architects, a telegram which by its terms was intended to and did in fact change its bid on said general contract by deducting from said bid of One Million Seven Hundred Fifty Thousand Dollars ($1,750,000.00), the sum of Five Hundred Sixty-nine Thousand Six Hundred Eleven ($569,611.00) and that such deduction resulted in the making of the base bid of plaintiff the sum of One Million One Hundred Eighty Thousand Three Hundred Eighty-nine Dollars ($1,180,389.00) and that this telegram was received by said Board of Education prior to the opening of any bids received in connection with said construction;

"7. That at the time and place fixed for the opening of bids for said construction as provided for in the invitation for bids, the defendant, Board of Education, and all of its members met and opened all of the bids submitted therefor, including the original bid of the plaintiff, and the said telegram of the plaintiff making the change and deduction therein;

"8. That nothing contained in the plaintiff's bid or his aforesaid telegram, imparted or implied in any way notice to the defendant, Board of Education, or any of the defendants herein, that there was a mistake in said bid and that upon the consideration of all of the said bids and discussion of the same with its architects, said Board of Education found the bid of the plaintiff to be the lowest bid among nine bids submitted for said general contract and upon motion of one of the members of said Board, duly made, seconded, and passed by the unanimous vote of all of the members of the Board, a Resolution was adopted accepting the bid of the plaintiff, and the architects for the said Board were authorized to forward contracts to the plaintiff for execution by it on forms which were then and there signed on behalf of the Board by its President and Clerk, being on the type of forms included in the aforesaid plans and specifications;

"9. That the said bid of the plaintiff for the sum of One Million One Hundred Eighty Thousand Three Hundred Eighty-nine Dollars ($1,180,389.00) was for a reasonable and proper amount and was higher than the estimate of the Architects for the completion of the work;

"10. That at the time of the acceptance of the bid of the plaintiff as contained in its bid and as modified by its aforesaid telegram, the defendant, Board of Education, had no notice of any mistake or alleged mistake, that had been or may have been made by the plaintiff and that the defendant, Board of Education, had accepted the plaintiff's bid in good faith prior to any claim or mistake being made on behalf of the plaintiff and that a contract for said work and construction came into existence at the time of the acceptance of the plaintiff's bid by the defendant, Board of Education;

"11. That subsequently thereto, on April 11, 1957, Victor H. Loebsack, one of the architects for the Defendant, Board of Education, received a telephone call from an employee and an officer of the plaintiff Corporation, claiming that a mistake had been made in the aforesaid bid of the plaintiff and that at that time, the said Architects notified the plaintiff of the acceptance of its bid, giving the approximate amount thereof, and also notifying said plaintiff through its said officer and employee that said bid had been accepted and contracts were being signed by the defendant, Board of Education; and that on

April 12, 1957, contracts therefor signed by the officers of the defendant, Board of Education, were by said Architects forwarded to the plaintiff for signature and that the time for completion of the work fixed thereby, to wit: January 1, 1959, was reasonable;

"12. That the plaintiff failed to sign contracts submitted to it by the defendant, Board of Education, within the time limited by the aforesaid invitation to bid and bid, and that in order to save itself some additional and successive loss and after the expiration of the time fixed for the signing of the contract for said work, the defendant, Board of Education, entered into a contract with Hunter and Lundberg, the next lowest bidders, for the general construction of the work contemplated, for the sum of One Million Two Hundred Eighty-nine Thousand Eight Hundred Thirty-one Dollars ($1,289,-831.00) subject to the alternates therein set forth, and that said contract resulted in the defendant, Board of Education, being obligated to pay the said firm of Hunter and Lundberg a sum of One Hundred Nine Thousand Four Hundred Forty-two Dollars ($109,442.00) over and above the bid of the plaintiff and that as a consequence thereof, the defendant, Board of Education has been damaged;

"13. That the difference between the said bid of the plaintiff which was accepted by the said Board of Education and the amount of the Contract executed with said firm of Hunter and Lundberg exceeds the $75,000.00 penalty amount of the Bid Bond submitted by the plaintiff;

"14. That the purpose and effect of said Bid Bond were to determine the maximum amount of liquidated damages sustained or to be sustained by the Defendant, Board of Education, upon default of the plaintiff;

"15. That the plaintiff by failing to enter into a contract for said construction has defaulted upon its said Bid and that said Bid Bond remains and is now in full force and effect and is enforceable against the Principal and Surety thereon as provided by law;

"16. That Plaintiff is not entitled to the equitable relief prayed for in its Petition, for the reason that there was in fact no mistake in the plaintiff's bid of One Million One Hundred Eighty Thousand Three Hundred Eighty-nine Dollars ($1,180,389.00) for said general contract as described in paragraph 6 above."

Judgment was entered accordingly, and the journal entry recites:

". . . that the Bid Bond of the plaintiff be and the same is hereby declared and adjudged to be in full force and effect and is enforceable against the Principal and Surety thereon as provided by law and that the plaintiff pay the costs of this action taxed at $_____."

Plaintiff's motion for a new trial being overruled, it has appealed and specifies fourteen alleged errors.

In its brief plaintiff states the principal questions to be substantially as follow:

1. The primary question involved is whether a material mistake, other than one of judgment, was made by plaintiff or its agent in submitting its bid.

2. The evidence of plaintiff having shown conclusively that a material mistake of $100,000.00 was made in connection with its bid, and, there being no evidence to controvert such evidence, could the trial court justifiably find that no mistake was made—in other words, was there any evidence to support the finding that no mistake was made?

3. In view of all the evidence showing the specific mistake of $100,000.00 in plaintiff's bid, which was not controverted, is plaintiff entitled to a judgment enjoining the forfeiture of its bond—that is, is a contractor bound by his bid when he makes a material mistake, other than one of judgment, in his bid, and, upon discovering the mistake, promptly notifies the parties concerned of such mistake before any of the parties have changed their position?

4. Was a valid and binding contract entered into between plaintiff and the board?

5. Were various findings and conclusions of the trial court contrary to the evidence?

6. Did the court err in overruling plaintiff's motion for a new trial?

As we view this record, we agree with plaintiff that the primary question—in fact, we think the basic one—is whether a mistake, other than one of judgment, was made by plaintiff in submitting its bid of $1,180,389.00. In other words, is there a basis in the evidence for the trial court's finding (No. 16, above) that there was in fact no mistake in the bid?

In support of its position, plaintiff directs our attention to much evidence which, if believed and taken at its face value by the trial court, points to the conclusion that in fact a mistake in the amount of $100,000.00 actually was made. It cannot be denied there is evidence to support a finding contrary to that made by the trial court. On appeal, however, that is not the question. The question is—is there substantial evidence to support the finding made?

Where findings are attacked for insufficiency of evidence this court's power begins and ends with a determination as to whether there is any competent substantial evidence to support them, and this court has no power to judge the value of the evidence, to weigh the evidence, to consider the credibility of the witnesses, or to resolve conflicts in the evidence or in the reasonable inferences that may be drawn therefrom. For a thorough discussion of this proposition we call attention to what was said in *Bruington v. Wagoner,* 100 Kan. 439, 164 Pac. 1057.

The case presents a very unusual situation. Certain undisputed facts, however, stand out in clear relief. It appears certain that the "deduct" figures telephoned by plaintiff to the telegraph office in Hutchinson were "$569,611.00," and that those figures were trans-

mitted to Leavenworth and, in turn, to the board. They made plaintiff's bid $1,180,389.00, and, it being the lowest, was accepted prior to any information the board had that plaintiff was claiming a mistake had been made. Shortly thereafter Foy and McGaffin, after being advised by a materialman that plaintiff's bid was low by approximately $109,000.00, began checking their "estimate lists" and concluded they had omitted the window walls. Their reason for so concluding was that in the nature of things there would not be such a wide "spread" in bids on a contract of this size, and they therefore reasoned as the price of the window walls approximated the amount by which their bid was low—the window walls must have been omitted. It developed, however, and it is not disputed, that the figure for the window walls was not in fact omitted from the estimate lists. This being true, plaintiff then urged the proposition that perhaps McGaffin, in his haste, had mistakenly given the figures of the "deduct" over the telephone to the telegraph office as "$569,611.00" when, in truth and in fact, he intended "$469,611.00," which of course would account for the discrepancy and difference of $100,000.00 in the bid actually submitted and accepted, and the corrected bid.

Be that as it may, all of the circumstances surrounding the alleged mistake were within plaintiff's control, and it was its burden to prove to the satisfaction of the trial court, by clear and convincing evidence, that an actual and honest unilateral mistake, other than one of judgment, had been made.

It failed in that burden.

It may well be that the trial court simply placed little or no credence in plaintiff's evidence. It may be that the trial court concluded the whole thing was an "afterthought" on the part of plaintiff when it discovered how low its bid was in relation to bids submitted by other contractors. From the evidence in the case, the trial court very easily could have concluded that plaintiff's bid was the result of bidding "too close"—that is, it was merely a mistake of judgment, for which, under the circumstances, equity would afford no relief. In many respects plaintiff's explanations for its alleged "mistake" were highly improbable and quite implausible. All of these matters were within the power and prerogative of the trial court to determine, and, after a most careful examination of the record, we are unable to say the trial court's findings have no basis in the evidence. The fact there is evidence which, if believed, would

support a finding contrary to that reached by the trial court is of no concern on appellate review.

In view of our conclusion that the ultimate finding of the trial court (No. 16, above) that there was in fact no mistake in plaintiff's bid of $1,180,389.00 must be upheld, plaintiff's contentions and citations of authority with respect to rules applicable where a mistake in a matter such as this has been established, become immaterial and of no consequence. Its first burden was to establish that a mistake had been made. Having failed in that burden, it cannot prevail.

The judgment is therefore affirmed.